DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
ryandustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## IN THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACHARY HARRIS,<br><br>                              Plaintiff,<br><br>v.<br><br>BECHTEL MARINE PROPULSION CORPORATION, and FLUOR MARINE PROPULSION, LLC,<br><br>                              Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Zachary Harris, by and through his counsel of record, Casperson Ulrich Dustin PLLC, for cause of action against Defendants Bechtel Marine Propulsion Corporation, and Fluor Marine Propulsion, LLC, alleges and complains as follows:

## JURISDICTION AND VENUE

1.      This is an action brought under the Americans with Disabilities Act, as amended, ("ADA") 42 U.S.C. § 12101, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901, *et seq.*

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3.     Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## PARTIES

4.     Plaintiff Zachary Harris ("Plaintiff") is a male citizen of the United States of America, who resides in Rigby, Idaho.

5.     Defendant Bechtel Marine Propulsion Corporation ("BMPC") is a Delaware corporation, which, at all times pertinent to this Complaint, operated its business in Butte County, Idaho.

6.     Defendant Fluor Marine Propulsion, LLC ("FMP") is a Delaware corporation, which does business in Butte County, Idaho.

7.     BMPC held the contract for, and operated, the Naval Nuclear Laboratories ("NNL") located on the Idaho National Laboratory ("INL") site through September 30, 2018.

8.     As of October 1, 2018, FMP took over the contract for the NNL on the INL site.  Upon information and belief, FMP is responsible for the liabilities of BMPC arising under BMPC's prior contact to manage the NNL.

9.     BMPC and FMP are referred to herein collectively as "Defendants."

10.    At all times material to this Complaint, BMPC and FMP each individually regularly employed fifteen or more persons, and were engaged in an industry affecting commerce, bringing Defendants within the ambit of 42 U.S.C. §12101, *et seq.*

11.    At all times material to this Complaint, BMPC and FMP each individually employed 50 or more employees, thereby making BMPC and FMP each individually a covered employer for purposes of 29 U.S.C. § 2601, *et seq.*

## FACTS COMMON TO ALL COUNTS

12.   Plaintiff realleges and incorporates by reference paragraphs 1 through 11 above, as though fully incorporated herein.

13.   Plaintiff began working for BMPC in or around mid-September 2010.  Plaintiff worked for BMPC as a Security Police Officer until November 2015, at which point he changed positions and began working as a Nuclear Working Technician for BMPC.

14.   At all times relevant to this Complaint, Plaintiff performed his job duties satisfactorily.

15.   In or about January 2013, Plaintiff also began working for the Madison County Sheriff's Office as a reserve officer on his off-duty time. Plaintiff hoped to possibly obtain a deputy position in the future.

16.   On or about January 26, 2018, Plaintiff had surgery on his hands due to carpal tunnel syndrome he had developed at work due to his job duties.

17.   In order for Plaintiff to have his surgery and recover from this worker's compensation injury, he was off of work from January 26, 2018, through February 19, 2018.

18.   Plaintiff returned to work on February 19, 2018, on light duty.  Plaintiff was on light duty from February 19, 2018 through approximately March 26, 2018.

19.   In or around mid-March 2018, Plaintiff learned he had a torn labrum, torn rotator cuff, and bone spur in his left shoulder, and needed surgery.  Plaintiff spoke with his managers about his need to have surgery to repair his shoulder.

20.   Plaintiff's surgery was scheduled for April 11, 2018, and Plaintiff requested time off from April 11, 2018 to approximately June 6, 2018, or until he was recovered enough to return to work. Plaintiff's leave requests was approved.

21.     Plaintiff's shoulder was not completely healed by June 6, 2018, and his leave was extended by his doctor.  Plaintiff's doctor released him to return to work on light duty on July 23, 2018.

22.     Plaintiff returned to work with a light duty release on July 23, 2018.  However, Plaintiff was told by HR that because his shoulder issues and surgery were not worker's compensation related, his employer did not have to provide him with light duty work.

23.     Plaintiff was sent home and told not to come back to work until he was 100% recovered.

24.     On or about September 4, 2018, Plaintiff returned to work, with a full release from his doctor.  Shortly after Plaintiff arrived at work, he was told by his manager that he needed to go to HR.

25.     In the HR office, Plaintiff met with HR manager Jake Erickson ("Erickson").  The conversation began with Erickson asking Plaintiff a multitude of very odd questions, such as "Have you ever faked an injury to get out of work?", "Have you ever pretended to not know how to do your job to get out of work?", "Have you ever looked at pornography on the bus?", "Have you ever discussed your sex life at work?", and "How is your sex life with your wife?"

26.     The questions caught Plaintiff off guard, and HR seemed to be fishing for any potential policy violation that could be used against him.  Plaintiff told HR "no" in response to all of the questions, but did explain that on a couple of occasions when he was riding the bus home from work, he had followed links online to what turned out to be pornography.

27.     The bus Plaintiff rode home from work transports workers to and from the Naval Reactor Facility ("NRF") at the INL Site.  Employees pay fare for the bus, and are not paid or on the clock in any capacity when riding the bus. Employees can choose to pay for the bus

transportation or drive their personal vehicles. Plaintiff paid for and rode the bus to and from work.

28.   Because Plaintiff worked the swing shift, he would typically get on the bus at approximately midnight and the ride home for Plaintiff would take until approximately 1:15 am.

29.   The bus was typically not very full, and everyone who rode the bus would typically spread out and take their own row.  Most people slept during the bus ride.

30.   On the couple of occasions when Plaintiff followed the online links, there was no one sitting by him, he kept to himself, and did not show anyone what he was watching on his phone, nor did he position his phone in a manner where other people would be able to see what he was watching. In addition, the screen on his phone was small.

31.   Erickson informed Plaintiff that BMPC was going to conduct an investigation into his conduct.

32.   Plaintiff was very concerned that the claimed "investigation" was being done to retaliate against him.  The following day, Plaintiff spoke with his manager and explained that he was concerned that he was being retaliated against.  Plaintiff's manager told him to take those concerns to Erickson in HR.

33.   Plaintiff went to Erickson and informed him that he was concerned about the reasons the investigation was occurring and felt that he was being retaliated against.

34.   In response to Plaintiff raising concerns, Erickson told Plaintiff he was being put on paid suspension off-site until the investigation was complete.

35.   On or around September 27, 2018, while he was still on suspension, Plaintiff received a phone call from BMPC stating that he had been terminated for violation of BMPC's Rules of Conduct Policy - Harassment Free Workplace.

36. Plaintiff was never provided with any information regarding specific allegations against him, whom he had allegedly sexually harassed or when the conduct for which he was allegedly terminated occurred.

37. After Plaintiff was terminated, BMPC contacted the Madison County Sheriff's Office, and informed them that he had somehow abused his position as a sheriff's deputy while at BMPC. The allegations were false. As a result of BMPC's report, Plaintiff was suspended from his job at the Madison County Sheriff's Office and later fired.

38. Plaintiff dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Idaho Human Rights Commission ("IHRC") on or about May 17, 2019.

39. Plaintiff received his Notice of Right to Sue letter on or about July 14, 2020.

40. Plaintiff has exhausted his administrative remedies.

## COUNT I
## VIOLATION OF THE ADA/IHRA
### (Disability Discrimination/Failure to Accommodate)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 above, as though fully set forth herein.

42. Plaintiff has or had at all times relevant to this lawsuit, a disability, a record of disability, and/or Defendants perceived Plaintiff as being disabled, as defined by the ADA and the IHRA.

43. Plaintiff was qualified for his job and was performing the essential functions of the job satisfactorily, with or without accommodation.

44. Plaintiff's actual or record of a disability substantially limits one or more major life activities, including his ability to grasp, lift, push, work, and sleep.

45.     Plaintiff requested reasonable accommodations from Defendants based upon his disability, which Defendants refused.

46.     Defendants took adverse employment actions against Plaintiff by refusing to engage in the interactive process when Plaintiff attempted to return to work on light duty, sending Plaintiff home when he returned to work on light duty because he was not 100% released, not allowing Plaintiff to work when he did return to work fully released, suspending Plaintiff, and terminating Plaintiff.

47.     As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation based upon the discrimination he experienced.  Further, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

48.     Defendants' conduct was malicious and done with reckless indifference to Plaintiff's federally protected rights.  Consequently, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT II
## VIOLATION OF ADA/IHRA
### (Retaliation)

49.     Plaintiff realleges and incorporates by reference paragraphs 1 through 48 above, as though fully set forth herein.

50.     Plaintiff was qualified for his job and was performing his job satisfactorily.

51.     Plaintiff engaged in a protected activity under the ADA and the Idaho Human Rights Act when he exercised his right to take leave in order to treat the condition underlying his

disability and when he complained that he was being retaliated against by being investigated the day he returned to work from leave.

52.   Plaintiff was subject to adverse employment actions as a result of his protected activity, including being suspended the day after he returned to work from leave and immediately after he reported his concern that he was being retaliated against, being terminated while he was suspended, and having Defendants tell Plaintiff's other employer that Plaintiff had abused his position as a sheriff's deputy while employed at BMPC.

53.   Defendants discriminated against Plaintiff and/or retaliated against Plaintiff due to him engaging in protected activity.

54.   As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation.  Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him.

55.   Defendants' conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (Retaliation and Interference)

56.   Plaintiff realleges and incorporates by reference paragraphs 1 through 55 above, as though fully set forth herein.

57.   Plaintiff was an eligible employee for purposes of the FMLA coverage.

58.     Plaintiff had a serious health condition, as defined by the FMLA, which entitled him to leave under the FMLA.

59.     Plaintiff gave appropriate notice to Defendants of his need to be absent from work due to his serious health condition.

60.     Plaintiff availed himself of a protected right under the FMLA by qualifying for and seeking leave to obtain treatment for his serious health condition.

61.     Defendants interfered with Plaintiff's right to take FMLA leave by, among other things, failing to provide Plaintiff with information regarding his right to FMLA leave, initiating an investigation against Plaintiff immediately upon his return from medical leave, suspending Plaintiff upon his return from medical leave, terminating Plaintiff's employment, and telling Plaintiff's other employer that Plaintiff had abused his position as a sheriff's deputy while employed at BMPC.

62.     Defendants retaliated against Plaintiff after Plaintiff, among other things, asserted that the investigation of him immediately upon returning from leave constituted retaliation, terminating Plaintiff's employment, and telling Plaintiff's other employer that Plaintiff had abused his position as a sheriff's deputy while employed at BMPC.

63.     Defendants took adverse employment actions against Plaintiff for complaining of retaliation upon his return from FMLA such as suspending Plaintiff immediately after he complained of retaliation, terminating Plaintiff's employment, and telling Plaintiff's other employer that Plaintiff had abused his position as a sheriff's deputy while employed at BMPC.

64.     As a direct and proximate result of Defendants' actions and/or failures to act, Plaintiff has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job

opportunities.  Plaintiff is therefore entitled to damages in an amount to be proven at trial, as well as any equitable remedies available to him, including reinstatement.

65.     Defendants' actions and/or failures to act were in bad faith, for which Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1).

## ATTORNEY'S FEES

66.     As a further direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which Defendants should be required to pay pursuant to 29 U.S.C. § 2617(a)(3) and 42 U.S. C. § 12205.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

1.     For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial and any available equitable remedies;

2.     For punitive damages;

3.     For pre-judgment interest;

4.     For attorney's fees pursuant to statute and costs of suit; and

5.     For such other and further relief as the Court deems just and proper.

Dated this 21st day of July, 2020.

_____/s/_____
Amanda E. Ulrich
CASPERSON ULRICH DUSTIN PLLC