UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

ZACHARY HARRIS,

           Plaintiff,

v.

BECHTEL MARINE PROPULSION
CORPORATION and FLUOR
MARINE PROPULSION, LLC,

           Defendants.

Case No. 4:20-cv-00360-JCG

**OPINION AND ORDER**

Pending before the Court are a motion for summary judgment and a motion to strike in an action brought by Zachary Harris ("Harris" or "Plaintiff") against Defendants Bechtel Marine Propulsion Corporation ("BMPC") and Fluor Marine Propulsion, LLC ("Fluor") (collectively "Defendants") for disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, and the Idaho Human Rights Act, Idaho Code § 67-5901, and retaliation and interference under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601.  Compl. (Dkt. 1).

On May 17, 2019, Harris filed a Charge of Discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC").  Compl. at ¶ 38.  A Notice of Right to Sue letter was issued on July 14,

2020.  Id. at ¶ 39.  Harris initiated this lawsuit on July 21, 2020, by filing a

Complaint alleging the following causes of action: (1) violations of the Americans

with Disabilities Act ("ADA") and the Idaho Human Rights Act ("IHRA") for

disability discrimination and Defendants' failure to accommodate Harris' disability

(Count I); (2) violation of the ADA and the IHRA for retaliation (Count II); and (3)

violation of the Family and Medical Leave Act ("FMLA") for retaliation and

interference (Count III).  Id. at ¶¶ 41–65.

Before the Court is Defendants' Motion for Summary Judgment

("Defendants' Motion" or "Motion for Summary Judgment") (Dkt. 110).  See

Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Br.") (Dkt. 111); Defs.' Statement

Material Facts Supp. Mot. Summ. J. ("Defs.' SMF") (Dkts. 112, 113).  Plaintiff

opposed the Motion and Defendants filed a reply.  Mem. Opp. Defs.' Mot. Summ.

J. (Dkt. 110) ("Pl.'s Resp. Br.") (Dkts. 120, 121); Defs.' Reply Pl.'s Opp. Defs.'

Mot. Summ. J. ("Defs.' Reply Br.") (Dkts. 125, 126).

During the briefing period for the Motion for Summary Judgment, Plaintiff

filed a motion to strike portions of three declarations that Defendants filed with

their Motion for Summary Judgment.  Mot. Strike Portions Decls. Jacob Stucki,

Bart Quayle, [Character Witness 2] (Dkts. 112-4; 112-19, 113-4)[1] ("Motion to

---

[1] It is apparent that Plaintiff erroneously referred to Dkt. 113-4 rather than Dkt.
113-5 because the provided docket entry number does not correspond to Plaintiff's
arguments and Dkt. 113-5 appears to be the appropriate document.

Strike" or "Pl.'s Mot. to Strike") (Dkt. 124). Defendants opposed the motion and Plaintiff filed a reply. Defs.' Br. Opp. Pl.'s Mot. Strike (Dkts. 130, 131, 132); Reply Mem. Supp. Mot. Strike Portions Decls. Jacob Stucki, Bart Quayle, [Character Witness 2] (Dkts. 112-4; 112-19, 113-4) (Dkt. 134).

For the following reasons, the Court denies Defendants' Motion for Summary Judgment and denies Plaintiff's Motion to Strike.

## BACKGROUND

The Court finds that the following facts are undisputed:

Around January 2018, Harris underwent surgery on his wrist to treat carpal tunnel syndrome. Pl.'s Statement Disputed Facts Opp. Defs.' Mot. Summ. J. (Dkt. 110) ("Pl.'s SDF") ¶¶ 11–12 (Dkt. 120-1); Defs.' SMF ¶ 9. Harris returned to work from his medical leave for carpal tunnel surgery on February 19, 2018 with light duty medical restrictions. Pl.'s SDF ¶ 12; Defs.' SMF ¶¶ 9, 17. Defendants accommodated Harris' restrictions by providing him with light duty work, including online training work. Pl.'s SDF ¶ 13; Defs.' SMF ¶ 19. On April 11, 2018, Harris underwent shoulder surgery. Pl.'s SDF ¶ 13; Defs.' SMF ¶ 9. On July 23, 2018, Harris returned to the Naval Reactors Facility and provided a doctor's release with medical restrictions. Pl.'s SDF ¶ 14; Defs.' SMF ¶ 22. Harris' restrictions were not implemented, and Harris was not returned to work

until September 4, 2018, after his medical restrictions were removed.  Pl.'s SDF ¶¶ 16, 20; Defs.' SMF ¶¶ 23–25.

Shortly after his return to work, Harris was informed that an investigation into his workplace conduct was underway, and he was being placed on leave for the duration of the investigation.  Pl.'s SDF ¶¶ 20, 24; Defs.' SMF ¶ 30.  BMPC employees have the option to ride a bus to and from the Naval Reactors Facility and employees pay for ride passes.  Pl.'s SDF ¶ 1; Defs.' SMF ¶ 42.  During the investigation, Harris admitted that he had watched pornography on the bus.  Pl.'s SDF ¶ 21; Defs.' SMF ¶ 39.  Defendants decided to terminate Harris' employment, with the stated reason being that Harris viewed pornography on the bus.  Pl.'s SDF ¶¶ 25, 37; Defs.' SMF ¶ 43.

## LEGAL STANDARD

The Court has jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## I.    Summary Judgment

Summary judgment is appropriate when a party demonstrates that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is a fact that may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  Disputes over irrelevant or unnecessary facts are insufficient to prevent a grant of summary judgment.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In evaluating whether the moving party has met this burden, the Court must view the evidence in the light most favorable to the nonmoving party and the Court must not make credibility findings.  Anderson, 477 U.S. at 255.

If the moving party satisfies this initial burden, the nonmoving party must identify facts sufficient to show a genuine issue for trial to defeat the motion for summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must go beyond the assertions and allegations of the pleadings and show through affidavits, depositions, answers to interrogatories, or admissions on file that a genuine dispute of material fact exists.  Id. at 324.

The Court must grant summary judgment if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

## II.    Motion to Strike

Generally, to object to evidence at summary judgment "[t]here is no need to make a separate motion to strike." Fed. R Civ. P. 56 Advisory Committee's Note to 2010 Amendment. Motions to strike are limited to pleadings which are defined by Federal Rule 7(a). See Albertson v. Fremont Cnty., Idaho, 834 F.Supp.2d 1117, 1123 n.3 (D. Idaho 2011). Thus, the Motion to Strike filed in this case will be construed as an objection pursuant to Rule 56(c)(2). See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see also Fed. R. Civ. P. 56(c). Under Rule 56(c)(2), the Court considers the contents of the evidence rather than its form. Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment. Id.

# DISCUSSION

## I.    Motion to Strike

The Court will address the materials objected to by Plaintiff to the extent necessary to evaluate whether the submissions are appropriate for consideration in ruling on the motion for summary judgment.  The Court will not address arguments challenging the weight or credibility of any evidence, or other such arguments contesting evidence that are not applicable at the summary judgment stage.  Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 255.  "'[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion, are all duplicative of the summary judgment standard itself' and unnecessary to consider here."  Ames v. Bonneville Joint Sch. Dist. No. 93, No. 4:22-cv-00364-DKG, 2024 WL 4368139, at *4 (D. Idaho Oct. 1, 2024) (quoting Holt v. Noble House Hotels & Resort, Ltd., 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019)).

Having reviewed Plaintiff's Motion to Strike, the Court concludes that many of Plaintiff's objections are duplicative of the summary judgment standard of review, or would require the Court to make credibility findings, which is not appropriate at this stage.  The Court has not relied upon the Stucki Declaration, Quayle Declaration, or Character Witness 2 Declaration in deciding Defendants'

Motion for Summary Judgment.  Therefore, Plaintiff's Motion to Strike is denied as moot.

## II.    Motion for Summary Judgment

### A.    Disability Discrimination, Failure to Accommodate, and Retaliation Under the Americans with Disabilities Act and the Idaho Human Rights Act (Counts I and II)

The Idaho Supreme Court has held that the IHRA will be interpreted in a manner consistent with the ADA.  See Loomis v. Heritage Operating, L.P., No. CV-04-617-S-BLW, 2006 WL 2228964, at *2 (D. Idaho Aug. 3, 2006) (citing Foster v. Shore Club Lodge, Inc., 908 P.2d 1228, 1232–33 (Idaho 1995)). Accordingly, any discussion regarding Harris' ADA claims also applies to his IHRA claims, and reference to one statute shall imply reference to the other.

### 1.    Discrimination

"To withstand a motion for summary judgment on an ADA claim, a plaintiff must either provide sufficient direct evidence of an employer's discriminatory intent, or give rise to an inference of discrimination by satisfying the burden-shifting test from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."  Mikealson v. Cummins, Inc., 792 Fed.Appx 438, 440 (9th Cir. 2019).  "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  Godwin v.

Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting Davis v.

Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994) (alterations in original)).

To establish a prima facie claim of disability discrimination under the ADA,

an employee must establish that he: "(1) is disabled; (2) is qualified with or

without reasonable accommodation to perform the essential functions of the job;

and (3) suffered an adverse employment action because of [his] disability." French

v. Idaho State AFL-CIO, 164 F. Supp. 3d 1205, 1218 (D. Idaho 2016) (citing

Sanders v. Arneson Prods., Inc., 91 F.3d 1351, 1353 (9th Cir. 1996)). "The burden

then shifts to the employer to provide a legitimate, nondiscriminatory (or

nonretaliatory) reason for the adverse employment action." Curley v. City of N.

Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014). "If the employer does so, then the

burden shifts back to the employee to prove that the reason given by the employer

was pretextual." Id.

The first element is whether Plaintiff was disabled. Defendants argue that

Harris was not disabled within the meaning of the ADA because his carpal tunnel

syndrome and shoulder injury were not long-lasting or serious enough to qualify as

a substantial impairment, and both injuries were addressed with surgery and a few

months of recuperation. Defs.' Br. at 12–14. Defendants cite to the EEOC

regulations appendix, which provide that, depending on the circumstances, six

months may be long enough to constitute a qualifying impairment. Id. at 13 (citing

29 C.F.R., Pt. 1630, App. (guidance on § 1630.2(j)(1)(ix))). Defendants aver that Harris' medical restrictions lasted fewer than six months and focus on testimony from Harris that he engaged in basic life functions such as walking, talking, reading, seeing, hearing, eating, driving, sleeping, physical intercourse, lifting objects, and maintaining a driver's license. Id. at 13–14 (citing Harris Dep. 54:1–62:23 (Dkt. 112-1)).

Under the ADA, an individual is disabled if the individual has a "physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). The statute provides that "major life activities" "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and *working*." Id. § 12102(2)(A) (emphasis added). Congress amended the ADA in 2008 to make it easier for plaintiffs to establish the existence of a substantially limiting impairment. Weaving v. City of Hillsboro, 763 F.3d 1106, 1112 (9th Cir. 2014). Now, "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred," rather than "whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2

(j)(1)(iii); see also 29 C.F.R. § 1630.2 (j)(1)(i) ("'Substantially limits' is not meant to be a demanding standard."). Generally, if a plaintiff's impairment significantly restricts the condition, manner, or duration under which the plaintiff can perform a major life activity, and the average person does not have a similar difficulty with that life activity, then the plaintiff's impairment satisfies the "substantially limits" test. Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1135 (9th Cir.2001). Further, "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C).

In support of his argument that he was disabled, Harris asserts the following. Harris' carpal tunnel syndrome injury occurred in June 2017, and he initially sought to treat the issue with conservative treatments and a brace for his wrist. Decl. Zachary Harris Supp. Pl.'s Opp. Defs.' Mot. Summ. J. (Dkt. 110) ("Harris Decl.") at ¶ 7 (Dkt. 120-10). In October 2017, Harris experienced issues with pain and mobility in his left shoulder and received a cortisone injection before learning in December 2017 that he had a superior labrum anterior and posterior tear. Id. at ¶ 8. Following the approval of his worker's compensation claim, Harris took a medical leave of absence from January 26, 2018, to February 19, 2018, for surgery on his right thumb and wrist. Id. at ¶ 10. Harris returned to work on February 19, 2018, and worked with restrictions on his wrist, completing tasks such as running

OPINION AND ORDER – 11

underwater cameras, attending mandatory trainings, and participating in drills.  Id.

Harris' shoulder pain persisted, and interfered with his sleep and range of motion,

causing pain when he attempted to lift or reach.  Id. at ¶¶ 11–12; see Harris Decl.

Ex. 3 at 1–3 (doctor's note).  Harris informed his manager, Mr. Stucki, of his torn

labrum around December 2017 and notified Mr. Stucki of his need for shoulder

surgery and approved leave around mid-March 2018.  Harris Decl. ¶¶ 12, 14.

Harris underwent surgery for his shoulder on April 11, 2018.  Id. ¶ 14.  Following

surgery, Harris' doctor found he had experienced an aortic aneurysm, and

completed short-term disability paperwork, which Defendants approved.  Id. at

¶¶ 15–17; see Harris Decl. Ex. 3 at 4–6.  Harris continued to visit his doctor for

follow-up visits and attended physical therapy.  Harris Decl. at ¶ 18.  Due to his

slow recovery, his return-to-work date was moved from July 5, 2018, to July 23,

2018.  Harris Decl. ¶ 18; see Harris Decl. Ex. 3 at 11–12.  Harris returned to work

on July 23, 2018, and brought with him a doctor's note that indicated he was

released to return to work full time, but with the limitations of no climbing ladders,

reaching, overhead work, or lifting with his left arm.  Harris Decl. ¶ 22; Harris

Decl. Ex. 3 at 18.

Based on the record, the Court concludes that a reasonable jury could find

that Harris satisfies the first element of his disability discrimination claim because

his physical impairment substantially limited his ability to complete the duties and

physical requirements of his job as a Nuclear Worker Technician. Therefore, the first factor is disputed, and a genuine issue of material fact exists.

The second element of Plaintiff's disability discrimination claim is whether Harris was qualified with or without reasonable accommodation to perform the essential functions of the job. The Parties dispute this second factor, particularly what the "essential functions" of Harris' job involved.

Defendants argue that the essential function of Harris' job was to use probe poles to move underwater nuclear fuel. Defs.' Br. at 17. Harris' lifting and reaching restrictions would have removed the essential function of this position, and Defendants were not required to create a new or light duty job that eliminated the essential job functions. Id. at 15–16. Defendants concede that light duty work was given to Harris when he returned with restrictions from his carpal tunnel surgery, but frame such accommodations as a courtesy rather than a legal obligation, and aver that there was no more light duty training work available or vacant positions that Harris was qualified to fill. Id. at 18. Plaintiff contends that the essential and secondary functions of the Nuclear Worker Technician job are contained in the Employee Job Task Analysis document, and Harris could perform the essential functions of his job description. Pl.'s Resp. Br. at 25; see Harris Decl. Ex. 1 ("Employee Job Task Analysis") (Dkt. 120-11).

The Employee Job Task Analysis document is a one-page checklist of essential and secondary requirements for the Nuclear Worker Technician position. The document is organized by categories such as "Sensory Abilities," with sub-categories including "Hearing," "Olfactory," and "Vision."  As an example from the "Personnel Requirements" category, the form denotes "Punctuality" and "Ability to Stay Awake" as essential, while "Abstract Thinking" and "Ability to Work Independently" are secondary.  The asterisk by the document's title leads to a footnote that states:

> This notification is required from management for each preplacement physical examination, change in position and change in job tasks.  It is used to determine the specific medical requirements for a position; and, under the Americans with Disabilities Act, must be submitted prior to the preplacement physical exam.  It is also used to advise OMD of the need for specific Medial Qualification and/or medical surveillance examinations.

Employee Job Task Analysis at 1.

While the document provides some insight into the physical, behavioral, and protective equipment requirements for the Nuclear Worker Technician job, the document is silent as to what the job entails, and how it is accomplished or performed.  However, it is not for the Court to weigh evidence or make credibility findings at this stage.  See Anderson, 477 U.S. at 255.

OPINION AND ORDER – 14

Viewing the evidence and inferences in a light most favorable to Plaintiff, the record evidence establishes issues of fact as to the essential elements of Harris' job.

The third element is whether Plaintiff suffered an adverse employment action because of his disability. The Parties dispute this third factor. Defendant argues that Harris' termination was based on his viewing pornography on the bus, which violated BMPC's Sexual Harassment Policy, and that Harris' medical conditions and related leaves of absence were not factors in the decision. Defs.' Br. at 9–12. Plaintiff argues that questions of fact exist regarding causation that require resolution by a jury. Pl.'s Resp. Br. at 16–19. Plaintiff contends that BMPC conducted a targeted investigation that revealed discriminatory animus from Harris' co-workers at the urging of management, and Defendants' decision to terminate Harris for his conduct on the bus was contrary to its internal policies regarding the bus. Id. at 18–19. Plaintiff also avers that whether BMPC handled Harris' investigation and termination consistent with its disciplinary procedures is unknown because the BMPC employee responsible for ensuring such consistency was not disclosed to Plaintiff during discovery. Id. at 19; see also Opinion and Order (Jan. 15, 2026) (Dkt. 138) (imposing sanctions upon Defendants in part due to the non-disclosure of Susan Rankin). The issues of whether the buses can be reasonably regarded as under the control of BMPC and subject to company

policies are material facts in dispute that require further factual inquiries at trial to understand whether termination was an appropriate response to Harris' conduct. The Court concludes that genuine issues of material fact exist as to the cause of Plaintiff's termination.

Thus, because the first, second, and third elements are disputed and require factual inquiries at trial, Defendants' Motion for Summary Judgment on Plaintiff's claim of disability discrimination under the ADA must be denied. Because summary judgment is not appropriate on Plaintiff's claim of disability discrimination under the ADA, the Court need not shift the burden to examine whether there was a legitimate, nondiscriminatory reason for the termination. Accordingly, Defendants' Motion for Summary Judgment on Harris' ADA disability discrimination claim is denied.

### 2.    Failure to Accommodate

To establish a prima facie failure to accommodate claim under the ADA, the employee must show that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual that can perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. §§ 12112(a), b(5)(A)).

To survive summary judgment, the employee must identify a facially reasonable accommodation. Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006). "[O]nce an employee requests an accommodation . . . the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002). This interactive process requires: "(1) direct communication between the employer and employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective." Id. Courts "should weigh the risks and alternatives, including possible hardships on the employer, to determine whether a genuine issue of material fact exists as to the reasonableness of the accommodation." Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999).

Reasonable accommodations include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R § 1630.2(o)(1)(ii). "Essential functions" cover the "fundamental" duties of a job, but they do not extend to the "marginal" responsibilities of a position. 29 C.F.R. § 1630.2(n)(1).

The first element of Harris' failure to accommodate claim is whether he was disabled within the meaning of the ADA.  As established earlier, the Court concludes that there are genuine issues of material fact as to the first element because the Parties dispute this factor.

Regarding the second element of Harris' claim, there are also genuine issues of material fact that preclude summary judgment, including the nature and scope of the interactive process to determine whether an appropriate accommodation existed, whether Defendants could have reasonably accommodated Plaintiff, and whether allowing Plaintiff to have remained employed would have imposed undue hardship on Defendants.  As discussed above, there is also an issue of material fact as to what the essential duties of Harris' job duties involved.

Defendants argue that even if Plaintiff was considered disabled under the ADA, there was no obligation to provide an accommodation because Harris could not perform the essential duties of his job.  Defs.' Br. at 15–19.  Plaintiff contends that Harris returned to work from medical leave for his shoulder surgery, submitted his medical documentation, and was later told to report to the medical department, where he was informed that Defendants did not need to offer light duty work because his injury was not worker's compensation related, and he would need to be 100% healed before returning to work.  Harris Decl. at ¶ 24.  Harris believed that

he had trainings, qualifications, and procedure reviews to complete.  Pl.'s SDF
¶ 16.

Viewing the evidence and inferences in a light most favorable to non-
movant Plaintiff, the record evidence establishes issues of fact as to whether
Defendants engaged properly in the interactive process.  Defendants may be
correct that further discussion would have led to the conclusion that there was no
reasonable accommodation available that would have permitted Harris to perform
the essential functions of his job.  However, aside from Harris' interaction with the
medical department, which he claims advised him that he needed to be 100%
healed before returning to work, the record is not clear as to whether there were
any meetings or discussions that occurred between Plaintiff and Defendants
regarding his medical restrictions and the feasibility of possible accommodations.
The duty to accommodate "is a 'continuing' duty that is 'not exhausted by one
effort.'"  Humphrey, 239 F.3d at 1137–38 (quoting McAlindin v. Cnty of San
Diego, 192 F.3d 1226, 1237(9th Cir. 1999) (holding that once aware of the need
for accommodation, an employer has an affirmative duty under the ADA to
explore further methods of accommodation before resorting to termination)).
Harris' position that he could complete light duty work, trainings, or underwater
camera work while recuperating might not have been unreasonable, depending on
what the essential duties of his work entailed and considering that only a few

months prior he had been assigned to such tasks to accommodate his recovery from hand surgery.  See Pl.'s SDF ¶ 12; Defs.' SMF ¶ 19.  Although Defendants contend that no vacant positions existed and there was no further light duty training work to be given, there is no record of this being communicated to Harris, thereby signaling that alternative solutions or the possibility of other accommodations should be explored.

The Court concludes that disputed material facts exist regarding whether Defendants engaged in the interactive process in good faith before determining that no accommodation was available for Harris.  As discussed previously with Harris' disability discrimination claim, issues of material fact also exist for the third element of causation.  Summary judgment in favor of Defendants for Harris' failure to accommodate claim must be denied.

### 3.    Retaliation

To claim retaliation under the ADA and IHRA, an employee must demonstrate that: (1) he engaged in activity protected under the ADA; (2) the employer subjected him to an adverse employment decision; and (3) a causal link existed between the two actions.  Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004).  "Pursuing one's rights under the ADA constitutes a protected activity."  Id. at 850.  Examples of protected activity include requesting an accommodation or filing a complaint regarding ADA compliance.  See e.g.,

Connor v. Quest Diagnostics, Inc., 298 Fed.Appx. 564, 566 (9th Cir. 2008).  An

adverse employment decision is any action "reasonably likely to deter employees

from engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th

Cir. 2000).

If the employee establishes a prima facie case, the burden shifts to the

employer to articulate a legitimate, non-discriminatory reason for its decision.

Pardi, 389 F.3d at 849.  If the employer articulates such a reason, the burden shifts

back to the employee to demonstrate that the reason was merely a pretext for a

discriminatory motive.  Id.  A plaintiff can prove pretext directly if he can show

that unlawful discrimination was more likely than not what motivated the

employer.  Opara v. Yellen, 57 F.4th 709, 723 (9th Cir. 2023).  The employee can

prove pretext indirectly if he can show that the employer's provided explanation is

implausible because it is internally inconsistent or otherwise unbelievable.  Id.  A

combination of direct and indirect evidence is also sufficient to demonstrate

pretext.  Id.

Plaintiff argues that Defendants violated the ADA by refusing to permit

Harris to return to work following his shoulder surgery unless he was healed

completely, and by conducting a biased investigation that resulted in his

termination shortly after returning from medical leave.  Pl.'s Resp. Br. at 22–24.

Defendants disagree that Harris' termination was retaliatory, focusing on the lack

of causation.  Defs.' Br. at 9–12.  Similar to Harris' other ADA/IHRA claims, there are issues of material fact regarding Harris' return to work, the nature and scope of the interactive accommodation process, and the cause of his termination.  The Court concludes that a dispute over material facts exists regarding Harris' claim for retaliation.

Because there are disputed facts regarding the retaliation claim, the Court does not need to address the burden shifting to examine whether Defendants have produced evidence demonstrating a non-discriminatory or non-retaliatory reason for Harris' denied accommodation and subsequent termination.  The Court notes that the Parties dispute whether there were non-discriminatory or non-retaliatory reasons for Harris' denied accommodation and termination.

The Court concludes that there are issues of material fact that preclude a finding of summary judgment in favor of Defendants.  See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112 (9th Cir.2004) ("In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses.").  Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's ADA and IHRA claims is denied.

### B.    Family Medical Leave Act (Count III)

### 1.    Retaliation

Under § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  An allegation of a violation of this section is known as a "discrimination" or "retaliation" claim.  See Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001).  An FMLA retaliation claim is subject to the McDonnell Douglas burden-shifting framework.  Bushfield v. Donahoe, 912 F. Supp. 2d 944, 953 (D. Idaho 2012); see also Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011) (acknowledging that although it is undecided in the U.S. Court of Appeals for the Ninth Circuit, other circuits apply the McDonnell Douglas framework).

To establish a prima facie case for an FMLA retaliation claim, a plaintiff must demonstrate that: "(1) [he] took or requested protected leave; (2) the employer subjected [him] to an adverse employment action; and (3) the request to take or taking of protected leave was a 'negative factor' in the adverse employment decision."  Tornabene v. City of Blackfoot, No. 4:22-cv-00180-AKB, 2024 WL 4145753, at *11 (D. Idaho Sept. 11, 2024).  If the employer articulates a legitimate reason for its action, the burden shifts back to the plaintiff to show that the reason given is pretext.  Sanders, 657 F.3d at 777 n.3.  Pretext can be proven indirectly, by

showing that the employer's explanation is not credible because it is internally inconsistent or otherwise not believable, or directly, by showing that unlawful discrimination more likely than not motivated the employer.  Id.

With regard to the third element, Defendants argue that Harris' medical leaves were never investigated or considered as a reason to terminate his employment, only Harris' viewing of pornography on the bus.  Defs.' Br. at 6. Plaintiff's response focuses on pretext and argues that the temporal proximity between Harris' leave and his termination supports an inference of pretext, and that Harris' termination due to his conduct on the bus was an inappropriate and inconsistent disciplinary response because the bus is not controlled by BMPC, Harris' conduct was after working hours, and the applicable rules called for Harris to lose his bus privileges at most.  Pl.'s Resp. Br. at 7–8.  The Court concludes that issues of material fact exist as to the cause of Harris' termination, including the ownership and operation of the company buses, the consistency of BMPC's disciplinary procedures and processes, and the temporal proximity between his return from leave and termination.

Therefore, there are triable issues of material fact regarding whether BMPC considered Harris' FMLA leave as a factor in his termination, and the Court denies Defendants' Motion for Summary Judgment on this claim.

##### 2.    Interference

Under 29 U.S.C. § 2615(a)(1), it is "unlawful for any employer to interfere with, restrain, or deny the exercise" of any rights guaranteed by the FMLA.  29 U.S.C. § 2615(a)(1).  "When a party alleges a violation of § 2615(a)(1), it is known as an 'interference' or 'entitlement' claim." Sanders, 657 F.3d at 777–78 (citing Bachelder, 259 F.3d at 1124).  The U.S. Court of Appeals for the Ninth Circuit does not apply the McDonnell Douglas burden-shifting framework to FMLA interference claims.  Id. at 778.  Rather, an employee must establish that: "'(1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled.'" Id. (quoting and adopting the elements of a prima facie case from Burnett v. LFW Inc., 472 F.3d 471, 477 (7th Cir. 2006)).  To establish an interference claim based on termination, a plaintiff must show "by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]. Bachelder, 259 F.3d at 1124.  The plaintiff can prove this claim with either direct or circumstantial evidence. Id.  The employer's intent is not a factor in evaluating whether an employer interfered with an employee's FMLA rights. Sanders, 657 F.3d at 778.

Defendants do not dispute that Plaintiff can establish the first four elements of his FMLA interference claim.  Defs.' Br. at 4.  Rather, Defendants contest that Plaintiff was denied FMLA benefits.  Id. at 4–5.  Defendants contend that Harris' leaves of absence were approved for the duration of his recuperations and that he was returned to light duty work when available, but there was no FMLA violation in not returning Plaintiff to light duty work upon his return to work from shoulder surgery in July 2018 because there is no employer obligation to restore an employee to his position if the employee is unable to perform essential job functions.  Id. (citing James v. Hyatt Regency Chicago, 707 F.3d 775, 781 (7th Cir. 2013)).

Plaintiff argues that Defendants interfered with Harris' FMLA rights because he was not reinstated to work on July 23, 2018, and his FMLA leave was used as a negative factor in his termination.  Pl.'s Resp. Br. at 5.  Plaintiff contends that Harris' physical limitations did not preclude his reinstatement, and that there were other tasks for him to complete such as trainings and qualifications.  Id.

The FMLA right to reinstatement after taking FMLA leave is limited because the statute provides: "Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).  "If the

employee is unable to perform an essential function of the position because of a

physical or mental condition, including the continuation of a serious health

condition . . . the employee has no right to restoration to another position under the

FMLA." 29 C.F.R. § 825.216(c).

Plaintiff avers that Harris' physical limitations did not prevent him from

returning to work and completing the essential functions of his job as described in

the Employee Job Task Analysis document, and that the essential functions BMPC

claims he could not perform were not essential according to this document. Pl.'s

Resp. Br. at 5; see Employee Job Task Analysis.

As with Harris' ADA claims, the Court concludes that there are disputes of

material fact regarding the essential functions of Harris' job, and therefore whether

he was entitled to reinstatement when he returned on July 23, 2018. The Court

concludes that a jury trial is necessary on Plaintiff's FMLA interference claim and

summary judgment is inappropriate.

Regarding Harris' termination, Plaintiff avers that the temporal proximity of

Harris' return to work and the initiation of his investigation, along with the

negative statements from Harris' co-workers regarding his leaves of absence, and

the less severe discipline given to other BMPC employees who viewed sexual

content during work hours in the company breakroom are factors that suggest that

Harris' termination was based on more than his conduct on the bus. Id. at 5–6.

The events surrounding Harris' return to work, the investigation into his bus conduct, and the existing questions of fact regarding the bus policies and the consistency of BMPC's discipline procedures are material issues that preclude a finding of summary judgment in Defendants' favor.  The Court concludes that the question of whether Harris' FMLA leave was a negative factor in his termination is a question more appropriate for resolution by a jury.

## CONCLUSION

Upon review and consideration of Defendants' Motion for Summary Judgment, Plaintiff's Motion to Strike, and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 110) is denied; and it is further

**ORDERED** that Plaintiff's Motion to Strike (Dkt. 124) is denied; and it is further

**ORDERED** that the Court will hold a five (5) day jury trial in this case; and it is further

**ORDERED** that no later than February 9, 2026, the Parties shall meet and confer and file a joint proposed scheduling order for proceeding to trial, along with a cover letter requesting the Court to enter the joint proposed scheduling order if there are no disputes or other issues concerning scheduling that the Court needs to

address. The pre-trial order should comply with District Local Rule 16.3 (Civil) and address trial submissions, trial memorandum and objections to trial submissions, responses to trial memoranda, motions in limine, voir dire, jury instructions, and exhibit lists. The Parties must also provide several potential dates on which they are available for a five (5) day jury trial. If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a conference with the Court.

DATED: February 2, 2026

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

* Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER – 29